In re John C. MCGRATH, Debtor.

Donnalyn McGrath, Movant,

v.

John C. McGrath and Ronda
J. Winnecour, Chapter 13
Trustee, Respondents.

Bankruptcy No. 01–20642 JKF.
Motion No. RLG–2.
Related to Docket Nos. 63, 96.[1]

United States Bankruptcy Court,
W.D. Pennsylvania.

Sept. 4, 2003.

Mary Bower Sheats, Pittsburgh, PA, for Debtor/Respondent[2].

Richard Bedford, Pittsburgh, PA, for Chapter 13 Trustee.

Robert L. Garber, Robert W. Koehler, Pittsburgh, PA, for Movant.

## MEMORANDUM OPINION [3]

JUDITH K. FITZGERALD, Chief Judge.

Before the court is a Motion for Sanctions against Debtor by his nondebtor

---

1. An oral order entered at hearing held on October 12, 2001, directed, *inter alia*, that a motion for sanctions filed at Dkt. No. 42, Motion No. 01–3382, be dismissed as it duplicated Motion RLG–2, Dkt. No. 63. On February 3, 2003, this court adopted an electronic case management and filing system which obviated the need to use motion numbers. Therefore, references in this Memorandum Opinion will be applicable docket numbers rather than motion numbers.

2. On December 3, 2002, an order was entered at Docket No. 162 granting Ms. Sheats' motion to withdraw as attorney for Debtor.

3. The court's jurisdiction was not at issue. This *Memorandum Opinion constitutes our findings of fact and conclusions of law.*

spouse, Donnalyn McGrath.[4] Movant asks that Debtor be held in contempt for failure to comply with orders of this court requiring him to respond to discovery requests in state court actions (seeking divorce, support, alimony, equitable distribution of marital assets and liabilities and child custody). Movant also requests that this court order the immediate incarceration of Debtor[5] during which time he must provide full details of his business and include methods of verifying the same relative to his self-employment. Further, Movant requests imposition of counsel fees and costs in addition to expenses of $2,000 but has filed nothing to substantiate the request.[6] Nonetheless, given the number of hearings and counsel's time involved just appearing before this court, $2,000 is a reasonable sum and will be approved. Movant was permitted to supplement her Motion for Sanctions and Debtor to respond. Both have done so.[7]

The gravamen of the instant motion is that Debtor has failed to comply with orders of this court and the Court of Common Pleas of Allegheny County, Pennsylvania, and has thereby caused Movant to incur substantially greater attorney fees as she seeks to enforce child custody, child support and other obligations through the state court system. This court voided a bench warrant issued by a Hearing Officer of the Court of Common Pleas after the automatic stay took effect and ordered Debtor to respond to all discovery requests made in the state court action and to provide the bankruptcy trustee and this court with answers to interrogatories and requests for admissions for the years 1999, 2000, and 2001. Debtor was also ordered to timely file his tax returns for the year 2000. Debtor timely filed with this court the answers to interrogatories and responses to a request for production of documents on April 30, 2001. Thereafter Movant filed the first motion for sanctions alleging that Debtor did not produce

> documentation which verifies his tax return entries, nor Debtor's earnings, car and truck expenses, materials, invoices, jobs, fees, income, nor any means whatsoever of objectively verifying and calculating Debtors' gross income or cost of goods in calculating Debtor's earnings.

Dkt. No. 42 at ¶ 3. By order dated October 22, 2001, this court granted Movant relief from stay to pursue only custody matters in state court and reserved enforcement of all financial components of the issues to itself. Dkt. No. 87. At a hearing held October 12, 2001, this court also entered an oral order requiring that

(1) operating reports be brought current by Debtor by November 20, 2001, and kept current thereafter or the case would be dismissed;

---

4. On June 14, 2001, Movant filed an initial motion for sanctions at Docket No. 42. Debtor filed a response on July 9, 2001. On July 13, 2001, Movant filed a second motion for sanctions at Docket No. 63 to which no answer appears on the docket. However, on October 22, 2001, an order was entered requiring counsel for Movant to file a supplement to the motion for sanctions. On November 2, 2001, at Docket No. 88, a modified order was entered granting the motion for sanctions at Docket No. 63. Thereafter, on January 18, 2002, Movant filed a "Supplement to Motion for Sanctions" at Docket No.

96 to which Debtor filed an answer on February 4, 2002, at Docket No. 98.

5. The request for incarceration is deferred.

6. Movant also requested that this court refer certain federal income tax returns of Debtor's to the IRS for "review, investigation, and audit". Motion for Sanctions, Dkt. No. 42, at ¶ 4. This request is denied.

7. Since the motion for sanctions was filed an order confirming Debtor's plan as modified was entered on October 10, 2002.

(2) all of Debtor's jobs (Debtor is a carpenter) were to have a written contract, estimate, receipts and invoices for materials, documentation of each job including customer name or location, bids, payments, advances, profit or loss from each job, etc. He was also to deposit all cash receipts into a single checking account noting the source of the cash and listing the name, address, and telephone number of the customer or other entity from which the check was received. Any checks written to cash by Debtor were to include a notation of the purpose (notations such as "supplies" were unacceptable by the terms of the order) [8] and any job associated with the withdrawal;

(3) counsel for Debtor was to produce all documents in her office for inspection and copying at Movant's expense and that such inspection was to be completed by December 7, 2001;

(4) the motion for sanctions was to be supplemented and a response by Debtor was voluntary. The oral order was later memorialized in a written order dated November 1, 2001, which was submitted by Movant's counsel and modified by the court.

The supplement to the motion for sanctions alleges that Debtor continues in his noncompliance with orders of the Court of Common Pleas and this court. Debtor's response states that he has complied with the Bankruptcy Court's orders to the "best of his ability" and that repeated allegations of lack of compliance are "unfounded" and attempts at obtaining sanctions were "harassing".

It appears from the Statements of Operations filed by Debtor subsequent to the November 1, 2001, order that Debtor has not complied with that order. Invoices merely state a last name of a customer, no address or other information as required by the November 1 order, and insufficient detail regarding costs of materials, payments to Debtor, expenses Debtor incurred, etc.

With respect to the initial motion for sanctions, Movant argues that numerous jobs were conspicuously unreported by Debtor, based on her comparison of Debtor's records with his testimony before the Hearing Officer in the Family Division of the Court of Common Pleas. She also contended that Debtor "unilaterally retrieved all of the documents" from his attorney's office before Movant was finished reviewing them. Motion for Sanctions, Dkt. No. 42, at ¶ 14. Debtor argued that Movant had had enough time to review the documents. Nonetheless, the order of November 1, 2001, required Debtor's counsel to produce all documents through April 30, 2001, for inspection and copying at Movant's expense no later than November 15, 2001. Movant was ordered to complete her inspection by December 7.

The supplement to the motion for sanctions was filed in January of 2002 and referred to deficiencies in Debtor's testimony to the Court of Common Pleas Hearing Officer in October of 2001 before this court entered the November 1 order. It is apparent that Debtor's record keeping leaves much to be desired. For example, his testimony before the Hearing Officer on October 18, 2001, indicates that on a particular job after April 1, 2001, he earned $500 per week and that he worked 10 to 12 weeks at that particular location. Exhibit L, Family Division Transcript of October 18, 2001, at 8, 15–16. He also testified that he deposited payments in his

---

8. On October 12, 2001, this court ordered Movant's counsel to prepare the order signed on November 1, 2001, and to present it to Debtor's counsel before submitting it to the court.

account at Iron and Glass Bank. *Id.* at 16. However, his bank statement from that month does not reflect any $500 deposits. There are only 3 deposits and they are in the amounts of $618.35, $250.00, and $576.98. There is no explanation or accounting for the rest of the income he testified that he had. The Statement of Operations provides no detail. This single example is representative of the information Debtor has supplied to this court. However, he testified that the people for whom he is working keep track of his hours when he is paid on an hourly basis. Dkt. No. 96, Exhibit L, Family Division Transcript of October 18, 2001, at 9. He also testified that he has no subcontractors or crew working for him but calls on people he knows in different trades. *Id.* at 17. Movant points out that Debtor submitted receipts during a time period when he was out of the country but his answer to the supplement to the motion for sanctions states that "co-workers hired for the jobs he was employed with occasionally purchased material for [him] when it was the co-worker's turn … and … the receipt would still be attributed to" Debtor. Answer to Supplement, Dkt. No. 98, at ¶ 5(i). The answer also states that he produced cash receipts for the period when he was in Sweden as material was purchased "on his behalf". *Id.* at ¶ 5(e). This is a credible explanation.

 In adjudicating the motion for sanctions we are asked to decide if Debtor complied with this court's orders. We find that even after the November 1, 2001, order, Debtor persisted in failing to provide detail which would enable a party in interest or the court to analyze his income and expenditures. He also failed to file monthly operating reports as required.

At the hearing held on October 12, 2001, we ordered Debtor's counsel to produce all documents in her office for Movant's inspection between November 15, and December 7, 2001. Movant has not denied that records were made available to her between November 15 and December 7, 2001. We conclude that Debtor has complied with this part of our orders.

On October 12, 2001, we also ordered Debtor to identify every future job by entering into a written contract, preparing an estimate, and keeping receipts and invoices for material purchases. In Movant's supplement to the motions for sanctions, she lists specific categories of Debtor's non-compliance with our orders. Movant alleges that Debtor admitted, at the October 18, 2001, hearing before the Hearing Officer of the Court of Common Pleas that he failed to disclose, in two separate responses to discovery, a number of jobs he had from which he earned income additional to that he reported to the state court for child support determination. At the hearing in the Family Division on October 12, 2001, the jobs were referred to by their local addresses: Arch Street, Walnut Street, Cypress Drive, and Wilbert Street. Referring to Debtor's responses to discovery, wherein he was asked to identify all of his jobs in 1999, we are unable to determine whether Movant's allegations are correct inasmuch as at the October 18, 2001, hearing the jobs were referred to by street names and in the answers to interrogatories the jobs were referred to by locations within the Pittsburgh metropolitan area (e.g., Crafton, Greentree, Castle Shannon, Pleasant Hills). *See* Dkt. No. 79, Exhibit 16, at Interrogatory No. 2. However, in her supplement to the motion for sanctions, Dkt. No. 96 at 4–5, ¶ 5(b), Movant identified Arch Street as being on the North Side of Pittsburgh, the Walnut Street job as in the Shadyside area, the Cypress Drive job in Scott Township and the Wilbert Street in Mt. Washington. When asked

at the Family Division October 18 hearing whether he worked at the Walnut Street address in February of 2000 he answered, "I guess. Once again, you guys know more about me than I do." Family Division Transcript of October 18, 2001, Dkt. No. 96, Exhibit L, at 48. It is not clear whether omission of the information in the answers to interrogatories was intentional or careless. However, under the Bankruptcy Code, Debtor has an obligation to provide information regarding his financial affairs and he consistently fails to do so.

Next, Debtor answered Movant's Interrogatories by indicating that his gross income for 1999 was $36,050. 1999 U.S. Individual Income Tax Return, Form 1040, Dkt. No. 96, Exhibit R, Schedule C, Profit or Loss From Business. However, bank statements for 1999 indicate that there were deposits for at least $47,854.[9] In his testimony before state court Hearing Officer Bingman on October 25, 2001, Dkt. No. 96, Exhibit M, 13 days after our oral order of October 12, 2001, memorialized in the November 1, 2001, order, Debtor indicated that the difference between the gross receipts of $36,050 listed on his 1999 federal income tax return and the total bank deposits, could be accounted for by referring to two other amounts—approximately $14,000 cashed in from the UGMA accounts and $4,486 he held for a youth soccer team.[10] Despite such testimony, the UGMA account statements provided by Movant, Dkt. No. 96, Exhibit S, show that by September of 1998 the balance in the UGMA account was zero. Debtor was the only custodian of that account. He apparently also was the only signatory on the soccer team account. Hence, the difference between Debtor's testimony of approximately $36,000 in gross revenue for 1999 and, at the minimum, more than $48,000 in deposits into Debtor's bank accounts during that year are not explained by transfers from the UGMA and soccer club accounts. Nothing in the record explains the disparity between the amount of bank deposits for 1999 and the amount that the bank statements of record indicate passed through his account.

Finally we examine the monthly statements which Debtor has submitted responsive to our order of November 1, 2001. Such order required Debtor to submit monthly detailed reports of his business activity to include, at the minimum, a full accounting of the sources of his income in traceable and documentable manner. He was prohibited from engaging in any transaction

> not fully and completely accounted for and completely documented such that all receipts and expenditures may be traced from the point of receipt until such time as Debtor is no longer affected by or in anyway [sic] related to the use of said receipt or expenditure.

Order of November 1, 2001, Dkt. No. 88, at ¶ 1.

Debtor was also to

> account for all financial aspects of any and all jobs, employments, or endeavors, including keeping and documenting each

---

9. Addition of the deposits shown on the 1999 bank statements, Dkt. No. 96, Exhibit U, total this amount. However, statements for January and April are not included in Exhibit U and November's statement is incomplete. Movant asserts that Debtor's 1999 bank deposits total $55,000, Dkt. No. 96, at ¶ 5(g).

10. The soccer team money was held in a separate account, see Dkt. No. 96, Exhibit Q, but he testified that it passed through his personal account. Id. at Exhibit M, Family Division Transcript of October 25, 2001, at 42. Further, Exhibit Q contains bank statements from September of 2000 through April of 2001. There is no information for 1999 in Exhibit Q with respect to the soccer account.

job, employment and endeavor in identifiable units or packets, such as the name of the customer or location of the work, including, but not limited to, bids, invoices, contracts, supplies, materials, receipts, and payments or advances from the customer or jobbers, all expenditures, all payments to helpers and subcontractors, hours and days worked or associated with the job, employment, and endeavor, the completion date, and the profit or loss from said job, employment and endeavor . . . .

*Id.* at ¶ 2. He was

prohibited from obtaining, purchasing, selling, supplying, transferring, acquiring, and conveying anything related to his business which is not completely documented, accounted for and, if applicable, specifically associated with and noted as to the specific job, endeavor, and employment with which it relates.

*Id.* at ¶ 7. Debtor further was "prohibited from dealing in undocumented and unaccounted for cash". *Id.* at ¶ 4.

Movant argues in her Supplement to Motion for Sanctions that Debtor has repeatedly failed to comply with these directives. Our examination of the monthly statements submitted by Debtor and the other materials Debtor has submitted [11] since the order of November 1, 2001, constrains us to agree. Neither the monthly statements nor the other materials (copies of bank statements and cancelled checks) contain the specificity which the order clearly required. Further, although Debtor was to submit statements of operations monthly from November, 2001, forward, the only ones which have been filed are an Amended Monthly Statement of Operations for November, 2001,[12] an Amended Statement of Operations for December, 2001,[13] a Monthly Statement of Operations for January, 2002 (all three of which were filed and February 21, 2002) [14] and Monthly Financial Reports for February, March, April, and May, 2002 (all of which were filed July 1, 2002).[15] On January 24, 2003, Debtor filed monthly financial reports for September, through December, 2002. Dkt. Nos. 163 through 166. No monthly financial reports were filed for June, July or August of 2002 and none have been filed for any period in 2003.[16]

We find Debtor in civil contempt of this court's orders. An appropriate order will be entered.[17]

---

11. *See* Dkt. No. 79, Exhibit 9, 2001 Bank Statements.

12. *See* Dkt. No. 102.

13. *See* Dkt. No. 103.

14. *See* Dkt. No. 104.

15. *See* Dkt. Nos. 128 through 131.

16. Interim Chapter 13 Procedures adopted as of November 19, 2002, provides that monthly operating reports shall be served on the Chapter 13 Trustee, not filed with the court. *See* Chapter 13 Procedure # 1.C.3. However, the order governing the filing of reports in this case predated the Chapter 13 Procedures currently in effect. Furthermore, this court has the discretion to enter orders "necessary or appropriate to carry out the provisions of" the Bankruptcy Code, 11 U.S.C. § 105, and has done so in this case. In addition, Fed. R.Bankr.P.2015(c)(1) requires a chapter 13 debtor engaged in business to perform duties prescribed by Fed.R.Bankr.P.2015(a)(2) through (a)(4) which, *inter alia*, require the debtor to file reports required by § 704(8). Section 704(8) requires the filing of "periodic reports and summaries of the operation of such business, including a statement of receipts and disbursements, and such other information as . . . the court requires".

17. This court previously stated that Debtor's failure to comply with the obligation to file monthly operating reports would result in dismissal of the bankruptcy case. Inasmuch as the ruling on the motion for sanctions has been delayed, the bankruptcy case will not be dismissed at this time.

## JUDGMENT ORDER AND FINDING OF CIVIL CONTEMPT

**AND NOW,** this 4th day of September, 2003, for the reasons expressed in the foregoing Memorandum Opinion, it is **ORDERED, ADJUDGED, and DECREED** that Movant's Motion for Sanctions, including a finding of civil contempt of court is **GRANTED** and judgment is entered in favor of Donnalyn McGrath and against John C. McGrath in the amount of $2,000 as reimbursement of counsel fees and costs, payable directly (i.e., not through the Chapter 13 Trustee's Office) to Donnalyn McGrath by Debtor in installments of $500 per month, the first payment of which is due on October 6, 2003, and each installment due on the 6th day of each month (i.e., November, 2003; December, 2003; and January 2004) thereafter until fully paid.

It is **FURTHER ORDERED** that on or before **October 20, 2003,** Debtor shall file and serve on Trustee all delinquent monthly operating reports.

It is **FURTHER ORDERED** that the request to incarcerate John C. McGrath for noncompliance with prior orders until he complies is deferred. Upon affidavit of default filed and served on Debtor and Trustee by Donnalyn McGrath for John C. McGrath's failure to timely pay an installment of the attorney fees awarded herein or filed and served by the Chapter 13 Trustee on Debtor, Ms. McGrath and her counsel, for Debtor's failure to timely file and serve all delinquent monthly operating reports, the court shall set a hearing to determine additional sanctions which may include incarceration, additional monetary sanctions, relief from stay to Donnalyn McGrath, and/or dismissal of the case.